## Kaurene's Estate.

*Executors and administrators—Husband and wife—Misconduct of administrator—Costs—Allowance of $5000—Act of June 7, 1917.*

1. The allowance of costs to a petitioner in the Orphans' Court does not depend upon the success of the litigation. The court, being one of equity, is vested with a wide discretion upon the subject.

2. Where a husband, who is also administrator of the decedent, petitions for the allowance of $5000 under the Act of June 7, 1917, P. L. 429, and the master, to whom his petition for the allowance and a petition for his removal have been referred, finds that he has flagrantly misconducted himself, both in the proceedings under the act and as administrator, the costs of the mastership will be imposed upon him personally, and this is the case whether the estate is more or less than $5000 in amount.

Exceptions to master's report. O. C. Phila. Co., July T., 1921, No. 526.

*Hugh Roberts*, for exceptant; *Sauder & Ehrenreich*, contra.

GEST, J., June 1, 1923.—Bertha W. Kaurene died Sept. 1, 1920, intestate and without issue, leaving a husband, Abraham A. Kaurene, and three brothers, who were her heirs-at-law. Letters of administration were granted to the husband on Oct. 8, 1920, and he on Aug. 12, 1921, filed his petition for the appointment of two appraisers to value the real estate and personal property of the decedent which the husband claimed as his special allowance of $5000, miscalled in his petition as an "exemption," under section 2 of the Intestate Act of June 7, 1917, P. L. 429. Appraisers were duly appointed, and they on Sept. 22, 1921, filed their report, in which they valued premises No. 1536 Carlton Street at $1000. On Oct. 18, 1921, Adolph Weisbard, one of the decedent's brothers, filed exceptions to this report, on the ground that the real and personal property were undervalued therein, and on Oct. 21, 1921, he also filed a petition praying for the removal of the administrator on the grounds of his improper conduct, neglect of duty and mismanagement of the estate.

An answer having been filed, and issue having been joined, this petition, and also the prior petition of the husband for his special allowance, were on Dec. 10, 1921, referred to Charles S. Edmunds, Esq., as master, who proceeded to take testimony in pursuance of his appointment. Before the master had concluded his sessions, the administrator filed his account on Feb. 27, 1922, and on March 1, 1923, the master filed his report, in which he found as facts that the real estate was worth $1800, that the property was undervalued and that the husband had wilfully misrepresented its assessed valuation in his petition. The master further found as facts that the administrator had neglected to include some personal property in his inventory, and that he had improperly administered his office with fraudulent intent. The master recommended that the appraisement of the real estate should be set aside and that the administrator should be removed on account of his maladministration. The master further recommended that the costs of the case, amounting to $569.20, including his fee and the stenographer's charges, be paid by the surviving husband personally and not by the estate.

Abraham A. Kaurene has filed no exceptions to the master's findings of fact, which must, therefore, be taken as correct. He has, however, filed excep-

3 D. & C.

tions to the master's conclusions of law, on the grounds substantially that the estate is less than $5000; that the husband is, therefore, entitled to the whole of it, and that consequently the petitioner has no interest in the estate. This, however, is a matter that can only be legally ascertained upon the adjudication of the administrator's account, which is still pending. In view of the master's findings of fact as to the careless methods of the administrator, his indifference to his office, his contradictory statements, his improper method of depositing estate funds, his neglect to include some articles in his inventory, etc., it cannot be assumed that the estate is less than $5000.

The real question before us relates to the payment of the costs, which the master has recommended should be borne by Abraham A. Kaurene personally. Even if it should be ultimately ascertained that upon a true and accurate accounting the net estate for distribution is not more than $5000, we are still of opinion that Kaurene should pay the costs of proceedings caused by his flagrant neglect of his duty. The testimony before the master, as stated in his report, affords ample justification for the exceptions to the appraisement of the real estate and for the petition to remove Kaurene as administrator. These proceedings were begun in good faith and founded on probable cause. The allowance of costs to a petitioner in the Orphans' Court does not depend upon his success in the litigation. The Orphans' Court being a court of equity, is vested with a wide discretion upon the subject: Rice, P. J., in Shadle's Estate (No. 2), 30 Pa. Superior Ct. 160. The administrator has only himself to blame. If he had complied with the law, he would have filed his account in April, 1921. He being in default, the master was appointed Dec. 10, 1921. The master held his first meeting on Jan. 20, 1922, and held several meetings before Feb. 27, 1922, when the administrator filed his account, doubtless as a result of these very proceedings. Had he desired to avoid or minimize these expenses he might have requested the master to suspend proceedings or have applied to this court either to suspend them or to vacate the appointment of the master, but he accepted the gage of battle and went on before the master. He cannot now be heard to complain of the natural result of his own action.

The exceptions to the master's report are dismissed.