

**FILED**
Nov 06 2015, 5:53 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS

Gordon A. Etzler
Gordon A. Etzler & Associates, LLP
Valparaiso, Indiana

ATTORNEY FOR APPELLEE

David W. Westland
Westland & Bennett, P.C.
Schererville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dean Vander Woude and Timothy Koster, <br><br> *Appellants-Plaintiffs,* <br><br> v. <br><br> First Midwest Bank, Successor in Interest to Bank Calumet, N.A., <br><br> *Appellee-Defendant.* | November 6, 2015 <br><br> Court of Appeals Case No. 64A04-1504-PL-160 <br><br> Appeal from the Porter Superior Court <br><br> The Honorable Roger V. Bradford, Judge <br><br> Trial Court Cause No. 64D01-0605-PL-3878 |

**Najam, Judge.**

## Statement of the Case

Dean Vander Woude and Timothy Koster appeal the trial court's judgment in their favor on their complaint against First Midwest Bank ("the Bank")

following a bench trial. Vander Woude and Koster present two issues for our review:

1.  Whether the trial court abused its discretion when it calculated their attorney's fee award.

2.  Whether the trial court erred when it denied their request for prejudgment interest.

We affirm in part, reverse in part, and remand with instructions.

## Facts and Procedural History

[2]  This court set out the relevant facts and procedural history in this matter in a prior appeal as follows:

> In 1999, Michael and Kim Angelini executed a note and mortgage with Bank Calumet, National Association ("Bank Calumet") regarding a Porter County property. Bank Calumet mistakenly recorded this mortgage in the Lake County Recorder's Office and not in the Porter County Recorder's Office. The Angelinis defaulted on this note and mortgage and, in October 2004, Bank Calumet initiated a foreclosure action in Porter Superior Court. In November 2004, the Porter Superior Court entered a default judgment. The Angelinis filed for bankruptcy soon thereafter, which caused the Porter Superior Court to stay the foreclosure.
>
> The Angelinis also executed a note and mortgage against the same property with Bank One[] and defaulted on this note and mortgage, too. Bank One filed a foreclosure action in Porter Superior Court, and the property was sold at a Sheriff's sale in March 2005 to Dean Vander Woude and Timothy Koster, who immediately took possession of the property via a Sheriff's deed. A Bank Calumet mortgage lien did not appear on the chain of

title in the Porter County Recorder's Office. In May 2005, Vander Woude and Koster entered into a purchase agreement to sell the property to a third party, scheduled with Ticor Title Company to close on or before June 30, 2005, as Vander Woude and Koster contend, or July 6, 2005, as FMB contends.

Meanwhile, the Porter Superior Court lifted the stay of Bank Calumet's foreclosure action and a Sheriff's sale was scheduled for June 2005. In May 2005, upon noticing the newspaper listing for a Sheriff's sale, Vander Woude contends he contacted David Westland, a Bank Calumet attorney, to prevent a second Sheriff's sale. Westland does not recall this conversation. The June 2005 Sheriff's sale was eventually canceled, but another was later scheduled for August 24, 2005.

Shortly before Vander Woude's and Koster's sale of the property was to close, Ticor's title search revealed the Bank Calumet foreclosure action. Ticor rescheduled the closing and Vander Woude and Koster discounted the sale of the property by $15,000. Ticor required Vander Woude and Koster produce $96,600, the amount of the listed mortgage in favor of Bank Calumet, before issuing clean title and a title insurance policy in the sale to the third party. Vander Woude and Koster produced and Ticor retained $96,600, and the sale was completed.

At some point Bank Calumet began to assist Vander Woude and Koster in correcting the errors and eliminating the mortgage and judgment liens. Specifically, Bank Calumet sent a letter to the Porter County Sheriff's Office dated August 10, 2005, to cancel the August 24, 2005[,] Sheriff's sale. In compliance with a demand from Vander Woude's and Koster's attorney, Bank Calumet completed and recorded a release of mortgage in the Lake County Recorder's Office on September 19, 2005. In November 2005, Ticor still had not released escrowed funds to Vander Woude and Koster. Bank Calumet requested Ticor do so, entered an indemnity agreement with Ticor on November 17,

2005, and on December 1, 2005, made a last request for Ticor to release escrowed funds to Vander Woude and Koster.

In May 2006, Bank Calumet merged with and into FMB. FMB does not dispute that it is the successor in interest to Bank Calumet for purposes of this case. Also in May 2006, Vander Woude and Koster filed suit against FMB, alleging slander of title, intentional interference with a contract, and conversion. Pursuant to cross-motions for summary judgment, the trial court entered summary judgment in favor of FMB as to intentional interference with a contract and conversion, and in favor of Vander Woude and Koster as to slander of title. At a February 2011 jury trial for damages, FMB filed a motion for judgment on the evidence at the close of Vander Woude's and Koster's case. The trial court denied this motion, the jury awarded damages to Vander Woude and Koster in the amount of $99,900, and the trial court entered a judgment in that amount.

*First Midwest Bank v. Vander Woude*, No. 64A04-1103-PL-120, 2012 WL 32082, at *1-2 (Ind. Ct. App. Jan. 5, 2012) (footnote omitted) ("*First Midwest Bank I*").

[3]     On appeal, we stated the issues for our review and summarized our decision as follows:

FMB raises two issues, which we reorder and restate as: whether the trial court erred in granting summary judgment as to slander of title in favor of Dean Vander Woude and Timothy Koster and denying the same in favor of FMB; and whether the trial court erred in denying FMB's motion for judgment on the evidence during a trial for damages. We conclude that the trial court erred in granting summary judgment to Vander Woude and Koster as to their claim for slander of title because a genuine issue of material fact remains. Accordingly, we reverse the trial court's order granting summary judgment, decline FMB's invitation to enter summary judgment in its favor, and remand this case for

further proceedings on this claim. This nullifies the jury verdict regarding damages for FMB's slander of title, so we need not address FMB's appellate challenge regarding its motion for judgment on the evidence.

*Id.* at *1.

[4] On remand, the trial court held a bench trial on July 22 and 23, 2014. The trial court took the matter under advisement and issued its order with findings and conclusions on March 12, 2015. The trial court found and concluded in relevant part as follows:

> 37. Plaintiffs incurred attorney fees in the prosecution of this action. Exhibit 46 in the bench trial contained several invoices and statements from attorney Etzler.
>
> 38. At the trial by jury on damages in this cause which was reversed and remanded, the Plaintiffs presented Exhibit 40 which were fee statements from attorney Etzler.
>
> 39. From Exhibit 40 admitted at the trial by jury, the Court finds that the following charges were applicable to this cause generally, not to the trial by jury:
>
> Invoice No. 1799 dated 6/30/06 in the amount of $3,100.00;
>
> Invoice No. 3386 dated 1/2/08 in the amount of $550.00; and
>
> Invoice No. 2268 dated 1/31/08 in the amount of $3,520.00.
>
> 40. From Exhibit 46 submitted at the bench trial in this cause, the Court finds that Invoice No. 7646 involves expenses from the jury trial and are not recoverable.

41. Invoice No. 7647 contains two (2) items that are not applicable to this bench trial, that being the entry from 6/11/12 of $400.00 and the entry from 2/12/13 in the amount of $400.00, leaving $8,304.50 applicable to this trial.

42. From Invoice No. 7648, none of those charges are applicable to this cause as they are all related to the appeal of the jury trial.

43. The charges shown on Statement No. 807 dated 9/30/13 in the amount of $850.00 apply to this cause.

44. From Statement No. 2151 dated 11/30/13, $250.00 are applicable to this cause.

45. From Statement No. 3387 dated 7/18/14, $6,450.00 are related to this cause.

46. Exhibit 46 did not include any time for the actual bench trial in this cause. The bench trial lasted three (3) hours on July 21, 2014 and four and one-half (4 1/2) hours on July 22, 2014. The applicable attorney fees for that time amount to $1,500.00.

* * *

CONCLUSIONS OF LAW

* * *

4. The recording of the mortgage at issue in Lake County placed a cloud upon the title to 601 Franklin Street, Valparaiso, Indiana as noted by Pioneer Ticor Title in its special exceptions. The filing of a mortgage foreclosure action further placed a cloud on the title of 601 Franklin Street, Valparaiso, Indiana as did the obtaining of a default judgment in the mortgage foreclosure action.

5. Those items were a slander of the title to 601 Franklin Street, Valparaiso, Indiana.

\* \* \*

7. Defendant, Bank Calumet's slander of title was the proximate cause of Ticor Title requiring Plaintiffs to place in escrow $96,600.

8. That resulted in the damages found in paragraphs 32, 34, and 35 of the Findings of Fact, totaling $54,614.30. The Court concludes that Plaintiffs are entitled to recover that amount from Defendant, Bank Calumet.

9. The Court concludes that Plaintiffs are entitled to recover attorney fees in this cause and the amounts they are entitled to recover are set out in paragraph[s] 39, 41, 43, 44, 45, and 46 of the Findings of Fact, a total of $24,524.50.

Appellants' App. at 162-66. This appeal ensued.

# Discussion and Decision

## *Issue One: Attorney's Fees*

[5] Vander Woude and Koster contend that the trial court abused its discretion when it did not award them the full amount of attorney's fees they had requested. The award or denial of attorney's fees is "in the exercise of a sound discretion, and in the absence of an affirmative showing of error or abuse of discretion we must affirm [the trial court's] order." *Malachowski v. Bank One, Indianapolis, N.A.*, 682 N.E.2d 530, 533 (Ind. 1997) (quoting *Zaring v. Zaring*, 219 Ind. 514, 39 N.E.2d 734, 737 (1942)). We review both the decision to

award attorney's fees as well as the amount of the fee, which must be supported by the evidence. *City of Jeffersonville v. Envtl. Mgmt. Corp.*, 954 N.E.2d 1000, 1013 (Ind. Ct. App. 2011), *trans. denied*. Indiana adheres to the American rule, which states that, in general, a party must pay his own attorney's fees absent an agreement between the parties, a statute, or other rule to the contrary. *R.L. Turner Corp. v. Town of Brownsburg*, 963 N.E.2d 453, 458 (Ind. 2012).

[6] Indiana Code Section 32-20-5-2 provides in relevant part that, in any action to quiet title to land, if the court finds that "a person has filed a claim only to slander title to land," the court shall award the plaintiff "all the costs of the action, *including attorney's fees that the court allows to the plaintiff*[.]" (Emphasis added). Thus, in this slander of title action, Vander Woude and Koster are entitled to attorney's fees, but the trial court has discretion in determining the amount of those fees.

[7] A trial court shall award only those attorney's fees that are reasonable. "[O]ur Rules of Professional Conduct give us guidance as to factors to be considered in determining the reasonableness of attorney fees[.]" *In re Order for Mandate of Funds*, 873 N.E.2d 1043, 1049 (Ind. 2007). In particular, Professional Conduct Rule 1.5(a) lists the following non-exclusive factors to be considered:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

[8] Here, in its findings and conclusions, the trial court did not identify or address any of those factors in determining the attorney's fee award to Vander Woude and Koster. Neither did the trial court explicitly award attorney's fees based on their reasonableness. Rather, the trial court categorically excluded from its award all claimed attorney's fees related to the jury trial, which it described as "not recoverable," and it also excluded from the award fees "related to the appeal of the jury trial."[1] Appellants' App. at 162. The trial court included only fees "applicable" to the bench trial, which took place on remand after the

---

[1] Again, on appeal, we reversed the trial court's entry of summary judgment in favor of Vander Woude and Koster and the jury's damages award.

first appeal. *Id.* Vander Woude and Koster maintain that the attorney's fee award was an abuse of discretion, and we must agree.

[9] In its closing argument to the trial court, the Bank argued that Vander Woude and Koster were not entitled to attorney's fees incurred in the course of the summary judgment and jury trial on damages because that judgment and verdict were reversed on appeal in *First Midwest Bank I*. In particular, the Bank argued that only a "prevailing party" is entitled to attorney's fees. *Id.* at 153. Thus, the Bank alleged, because Vander Woude and Koster did not prevail in the prior appeal, "attorney['s] fees from the first trial or the appeal are not proper." *Id.* And, in its order, the trial court awarded only those attorney's fees related to the bench trial, which took place on remand. Thus, it appears that the trial court agreed with the Bank on this issue.

[10] While the trial court has broad discretion in determining the amount of an attorney's fee award, here, the court's stated reasons for the award appear to be based on the Bank's misunderstanding of the applicable law. Again, Vander Woude and Koster are entitled to attorney's fees under Indiana Code Section 32-20-5-2, which provides for attorney's fees to the plaintiff where a person has filed a claim only to slander title to land. At trial, the Bank argued that Vander Woude and Koster were entitled to only those attorney's fees they incurred as the "prevailing party"—that is, the fees they incurred after remand from the first appeal. Appellants' App. at 153. On appeal, the Bank cites to Indiana Code Section 34-52-1-1(b), the General Recovery Rule, and case law relevant to that statute in support of that contention.

[11] But the Bank's reliance on that statute and related case law is misplaced. Nothing in the record indicates that the trial court awarded attorney's fees to Vander Woude and Koster based on Indiana Code Section 34-52-1-1(b), which provides that,

> [i]n any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:
>
> > (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;
> >
> > (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or
> >
> > (3) litigated the action in bad faith.

[12] That statute does not apply here. Rather, again, Indiana Code Section 32-20-5-2 applies and provides that a plaintiff who prevails in a slander of title action is entitled to "all the costs of the action, including attorney's fees that the court allows to the plaintiff[.]"[2] Likewise, the Bank's reliance on case law based on Indiana Code Section 34-52-1-1(b) is misplaced.[3]

---

[2] Unlike Indiana Code Section 34-52-1-1(b), Indiana Code Section 32-20-5-2 does not refer to "the prevailing party" but, instead, provides for attorney's fees to a plaintiff if the court finds for him on his claim of slander of title to land. Thus, had the trial court entered judgment in favor of the Bank on Vander Woude and Koster's complaint, the Bank would have been "the prevailing party" but would not have been entitled to attorney's fees under Section 32-20-5-2.

[3] In particular, citing to *Ashbaugh v. Horvath*, 859 N.E.2d 1260, 1268-69 (Ind. Ct. App. 2007), the Bank states that, "[w]here an Appellate Court reverses the judgment of a lower court, the party granted judgment by the

[13] The Bank also states that "[i]t is well settled that a trial court's judgment that has been reversed is a nullity, and a reversal returns the parties to the position they occupied prior to the judgment" reversed on appeal. Appellee's Br. at 4. In support of that contention, the Bank cites *Tioga Pines Living Center, Inc. v. Indiana Family and Social Services Administration*, 760 N.E.2d 1080, 1088 (Ind. Ct. App. 2001), and *Ebersol v. Mishler*, 775 N.E.2d 373, 382 (Ind. Ct. App. 2002). But that citation to the *Tioga Pines* opinion has to do with prejudgment interest, not attorney's fees, so it does not support the Bank's contention in this appeal.[4] 760 N.E.2d at 1088.

[14] And in *Ebersol*, in addressing attorney's fees, we stated as follows:

> Here, since we are remanding for further proceedings, *there is no prevailing party yet*, and there is no basis to award attorney's fees *at this time*. Thus, we reverse the trial court's attorney's fees award. Upon remand, once this case has been resolved by the trier of fact, the trial court may revisit the issue of awarding attorney's fees under Indiana Code [Section] 34-52-1-1.

---

lower court can no longer be said to be the prevailing party" and "there [is] no longer any statutory authority to maintain her award of attorney's fees." Appellee's Br. at 4. But *Ashbaugh* is distinguishable from the instant case for two reasons. First, in *Ashbaugh*, the attorney's fees were awarded pursuant to Indiana Code Section 34-52-1-1. And second, while we reversed the trial court's entry of summary judgment in favor of the plaintiff in *Ashbaugh*, we also entered summary judgment in favor of the defendant. 859 N.E.2d at 1268. Thus, not only was the plaintiff not entitled to attorney's fees, but the defendant was the prevailing party in that appeal, and there were no further proceedings. Here, in contrast, while Vander Woude and Koster did not prevail in the first appeal, they prevailed on remand. *Ashbaugh* is inapposite here.

[4] And the Bank makes no argument that the same principle should apply to the award of attorney's fees.

775 N.E.2d at 382 (emphases added). *Ebersol* does not support the Bank's contention in this appeal for two reasons. First, the discussion in *Ebersol* does not pertain to attorney's fees under Indiana Code Section 32-20-5-2. Second, in *Ebersol*, as here, we reversed the trial court's entry of summary judgment and remanded for further proceedings. And, while we stated that there was "no prevailing party yet," we did not *foreclose* an award of attorney's fees but, rather, explicitly left the issue of attorney's fees open to the trial court's discretion at the conclusion of the proceedings on remand. *Id.* In sum, the Bank's argument—on which the trial court apparently relied—with respect to Indiana Code Section 34-52-1-1(b) and related case law is incorrect.

[15] While a plaintiff must prevail in a slander of title action to be awarded attorney's fees under Indiana Code Section 32-20-5-2, nothing in the statute requires the apportionment of attorney's fees based on a plaintiff's intermediate success or failure at various stages of the proceedings leading up to the final judgment in his favor. At the end of the day, Vander Woude and Koster secured a final judgment on their claim against the Bank. The score at halftime may be worth noting, but the final score is what counts. Our review of relevant case law does not reveal any basis for the trial court's *categorical* exclusion from Vander Woude and Koster's attorney's fee award those fees related to the summary judgment, jury trial, or first appeal.[5] Instead, the trial court shall

---

[5] In *Benaugh v. Garner*, 876 N.E.2d 344, 348 (Ind. Ct. App. 2007), we observed, in dicta, that a trial court has discretion to deny attorney's fees related to a party's successful summary judgment motion that was subsequently reversed on appeal. However, in that case, it was clear that the party's summary judgment

determine the attorney's fee award based on reasonableness, guided by Professional Conduct Rule 1.5(a).

[16]     Still, contrary to Vander Woude and Koster's contention that they are entitled to *all* of the attorney's fees they requested,[6] the trial court has discretion under the applicable statute to determine a reasonable amount of the attorney's fee award.  That being said, the trial court explicitly excluded from the attorney's fee award those fees incurred prior to the first appeal.  Because the court's findings track the Bank's erroneous argument that the attorney's fees are limited because of the Bank's success in the first appeal, the attorney's fee award is based on a faulty premise, and we cannot say that the award is correct.  We reverse the attorney's fee award and remand to the trial court with instructions to award Vander Woude and Koster reasonable attorney's fees based on the factors set out in Professional Conduct Rule 1.5(a).

---

motion had "forced" the other party to respond to the motion and pursue a successful appeal. *Id.* at 348. And we observed that "[i]t is within the trial court's discretion to find that the appellees should not have to pay for [the appellant's] attorney fees related to this eighteen-month portion of the litigation, which was based on what was essentially [the appellant's] invited error and compounded by the trial court's erroneous summary judgment order." *Id.*  Here, in contrast, the parties filed cross-motions for summary judgment, so the Bank was complicit in causing the additional attorney's fees incurred as a result of those proceedings.

[6]  Vander Woude and Koster cite *Country Contractors, Inc. v. Westside Storage of Indianapolis, Inc.*, 4 N.E.3d 677 (Ind. Ct. App. 2014), in support of their contention.  But in that case, where we affirmed the trial court's award of all of the requested attorney's fees in a slander of title action, we based our holding on our determination that the award was based on "the court's unique expertise and familiarity with the case and with the customary legal fees charged in Hendricks County" and was within the trial court's broad discretion. *Id.* at 694.  Nothing in *Country Contractors, Inc.* supports Vander Woude and Koster's contention that the court has no discretion to award less than the requested amount of attorney's fees.

### Issue Two: Prejudgment Interest

[17]   Vander Woude and Koster next contend that the trial court erred when it denied their request for prejudgment interest. As we discuss below, the Tort Prejudgment Interest Statute ("TPIS") applies here, and an award under the TPIS is discretionary. *Inman v. State Farm Mut. Auto. Ins. Co.*, 981 N.E.2d 1202, 1204 (Ind. 2012). Thus, we review a trial court's denial of prejudgment interest under the TPIS for an abuse of discretion. *Kosarko v. Padula*, 979 N.E.2d 144, 146 (Ind. 2012). The trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. *Id.*

[18]   The TPIS is comprised of Indiana Code Sections 34-51-4-1 to -9, and it governs the award of prejudgment interest in any civil action arising out of tortious conduct.[7] Indiana Code Section 34-51-4-6 provides as follows:

> This chapter does not apply if:
>
> (1) within one (1) year after a claim is filed in the court, or any longer period determined by the court to be necessary upon a showing of good cause, the party who filed the claim fails to make a written offer of settlement to the party or parties against whom the claim is filed;
>
> (2) the terms of the offer fail to provide for payment of the settlement offer within sixty (60) days after the offer is accepted;

---

[7] Slander of title is a tort.

or

> (3) the amount of the offer exceeds one and one-third (1 1/3) of the amount of the judgment awarded.

Thus, a prerequisite to the recovery of prejudgment interest is a settlement letter. *Alsheik v. Guerrero*, 979 N.E.2d 151, 154 (Ind. 2012). The purpose of the settlement letter is to afford the adverse party notice of a claim and provide it with an opportunity to engage in meaningful settlement. *Id.*

[19] Here, Vander Woude and Koster concede that they "did not make an offer of settlement in accordance [with] the [TPIS.]" Reply Br. at 8. But they contend that the Bank argues the applicability of the TPIS for the first time on appeal. Thus, they maintain that the Bank has waived this issue. That contention is without merit. The TPIS applies in this case, as a matter of law.

[20] Vander Woude and Koster argue, in the alternative, that the common law governing the award of prejudgment interest applies and requires an award in this case. But our supreme court has expressly held that "the TPIS unmistakably implies the legislature's intent to substitute the statute for the common law with respect to cases falling within the scope of the TPIS." *Kosarko*, 979 N.E.2d at 149-50. Because Vander Woude and Koster failed to comply with the TPIS, they cannot demonstrate that the trial court abused its discretion when it denied their request for prejudgment interest.

[21] Affirmed in part, reversed in part, and remanded with instructions.

Kirsch, J., and Barnes, J., concur.